FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 29, 2024

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　-vs-<br><br>RANDY DEL McREYNOLDS,<br><br>　　　　　　Respondent. | No.　2:21-CR-0028-WFN-1<br><br>ORDER |

    Now pending before the Court is Defendant's 28 U.S.C. § 2255 Motion to Vacate Sentence. ECF No. 185. A hearing on the Motion was held February 14, 2024. The Defendant, who is in custody, was not present[1] but was represented by Richard Mount and Abigail Maurer-Lessor; Assistant United States Attorney Michael Ellis represented the Government.

    On June 30, 2021, Mr. McReynolds was convicted of being a felon in possession of a firearm and ammunition, as prohibited by 18 U.S.C. § 922(g)(1). ECF No. 109; ECF No. 119. He now argues that § 922(g)(1) is unconstitutional, at least as applied to him, because it violates the Second Amendment under the framework explained in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). ECF No. 185 at 10–26. Alternatively, Mr. McReynolds argues his sentence should be reduced because he should not have received a two-level enhancement for obstruction of justice. *Id.* at 26–28. The Motion will be denied for the reasons explained below.

---

[1] Mr. McReynolds asked to be excused from the hearing and voluntarily waived any right to appear because he did not want to be transported. ECF No. 192; ECF No. 192-1; ECF No. 192-2. His request was granted. ECF No. 193.

ORDER - 1

**Background**

In 2008, the Supreme Court decided the Second Amendment guaranteed an individual right to bear arms unconnected with militia service. *D.C. v. Heller*, 554 U.S. 570, 582–95 (2008). Before the *Heller* decision, mandatory authority in the Ninth Circuit had instructed that the Second Amendment does not guarantee an individual right to bear arms. *See United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir. 2005) (citing *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002)). Notably, the *Heller* Court limited its holding, writing:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626–27. This language has been called the "*Heller* Safe Harbor." *See, e.g.*, Brannon P. Denning & Glenn H. Reynolds, *Heller, High Water(Mark)? Lower Courts and the New Right to Keep and Bear Arms*, 60 Hastings L.J. 1245, 1247 (2009).

Two years later, a panel of the Ninth Circuit considered whether § 922(g)(1)—the statute at issue in this case—violated the individual right to bear arms guaranteed by the Second Amendment. *See United States v. Vongxay*, 594 F.3d 1111, 1114–18 (9th Cir. 2010). In *Vongxay*, the defendant contended § 922(g)(1) was unconstitutional under *Heller*. *See id.* at 1114. The court disagreed because the *Heller* Safe Harbor specifically states that "'*nothing in [the] opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons*.'" *Id.* (quoting *Heller*, 554 U.S. at 626). Critically, the panel rejected the defendant's argument that the *Heller* Safe Harbor was merely dicta. *Id.* at 1115. It explained that "[c]ourts often limit the scope of their holdings, and such limitations are integral to those holdings." *Id.* Because "*Heller* d[id] not render § 922(g)(1) unconstitutional," the *Vongxay* Court concluded that it was bound by existing Ninth Circuit precedent, *Younger*, holding § 922(g)(1) was valid under the Second Amendment. *Id.* at

ORDER - 2

1116 (citing *Younger*, 398 F.3d at 1192). Although *Heller* had invalidated "[t]he reasoning upon which *Younger* was based—that the Second Amendment does not give individuals a right to bear arms," *Heller* had not invalidated *Younger*'s specific holding that § 922(g)(1) does not violate the Second Amendment. *Id.* Therefore, *Younger*'s holding was still binding. *Id.* ("[T]he doctrine of *stare decisis* concerns the *holdings* of previous cases, not the rationales.'" (quoting *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996))).

Most recently, in *New York Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court made "more explicit" the test set forth in *Heller*. 597 U.S. 1, 31 (2022). Instead of applying means-end scrutiny, courts are to ask whether "the Second Amendment's plain text covers an individual's conduct." *Id*. at 24. If so, the conduct is presumptively protected, and the Government has the burden of showing the regulation "is consistent with the Nation's tradition of firearm regulation." *Id.* To show a regulation is consistent with the Nation's tradition, the Government must point to a "well-established historical analogue." *Id.* at 30. A historical restriction is analogous if it burdened the right to bear arms in a comparable way for comparable reasons. *Id.*

Notably, six justices agreed *Bruen* did nothing to undermine the *Heller* Safe Harbor. Justice Alito wrote: "Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . . Nor have we disturbed anything we said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 72 (Alito, J., concurring). Justice Kavanaugh, joined by the Chief Justice, quoted the *Heller* Safe Harbor language directly: "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 81 (Kavanaugh, J. concurring) (quoting *Heller*, 554 U.S. at 81). In dissent, Justice Breyer, joined by Justices Sotomayor and Kagan, agreed that *Bruen* casts no doubt on the *Heller* Safe Harbor. *Id.* at 129 (Breyer, J., dissenting).

### Discussion

The holding in *Younger* controls this issue. *See Vongxay*, 594 F.3d at 1116. In *Younger*, the Ninth Circuit squarely held that § 922(g)(1) does not violate a convicted felon's

ORDER - 3

Second Amendment rights. *Younger*, 398 F.3d at 1192; *see also Vongxay*, 594 F.3d at 1116. This Court is bound by that holding until it is overruled by the Ninth Circuit sitting *en banc* or the Supreme Court. *See Vongxay*, 594 F.3d at 1116.

Mr. McReynolds argues the Court is no longer bound by *Vongxay* and *Younger* because the Supreme Court overruled those decisions in *Bruen* and *Heller*. ECF No. 185 at 10–13.

The Court disagrees. In *Heller*, the Supreme Court stated expressly that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Heller*, 554 U.S. at 626. Although Mr. McReynolds refers to this language as dicta, ECF No. 185 at 12–13, the Ninth Circuit held in *Vongxay* that the *Heller* Safe Harbor was an integral part of the Court's holding and therefore binding. *Vongxay*, 594 F.3d at 1115. Therefore, *Heller* did not overrule *Younger*. *See id.* at 1115–16.

Nor did *Bruen*. True, *Bruen* is inconsistent with *Younger*'s reasoning, *compare Bruen*, 597 U.S. at 8–10, *with Younger*, 398 F.3d at 1192, but *Younger*'s reasoning "was [already] invalidated by *Heller*," *Vongxay*, 594 F.3d at 1116, and a panel of the Ninth Circuit has already decided that *Younger*'s holding survives though its rationale has been invalidated, *id.* at 1116. Because *Younger* squarely held that § 922(g)(1) does not violate the Second Amendment, *Younger*, 398 F.3d at 1192, and *Bruen* does not invalidate that holding, *see, e.g.*, *Bruen*, 597 U.S. at 81 (Kavanaugh, J. concurring), this Court is bound by *Younger*. *See Vongxay*, 594 F.3d at 1116; *cf. Vincent v. Garland*, 80 F4th 1197, 1202 (10th Cir. 2023) (determining that existing Tenth Circuit precedent squarely holding § 922(g)(1) constitutional remained binding because *Bruen* had not "indisputably and pellucidly" abrogated it).[2] Therefore, Mr. McReynolds's Second Amendment claim will be denied.

---

[2] Mr. McReynolds argued orally that *Vongxay* and *Bruen* are irreconcilable because *Vongxay* held that regulations in the *Heller* Safe Harbor were exempt from scrutiny and *Bruen* invalidated a licensing requirement for carrying concealed weapons even though

ORDER - 4

Finally, the Court rejects Mr. McReynolds's argument his sentence should be reduced. Two points were added to Mr. McReynolds's offense level for obstruction of justice because he told his wife to conceal a 9mm handgun in a recorded jailhouse conversation. Mr. McReynolds now argues his sentence should be reduced because the Government failed to provide the defense with recordings of other "video calls that would have contextualized Mr. McReynolds'[s] statements to his wife," and those recordings were destroyed. ECF No. 185 at 26–28. The Court rejects this argument for two reasons.

First, the statute of limitations has passed. Mr. McReynolds was sentenced on October 5, 2021, ECF No. 147, and he filed this Motion on December 20, 2023, more than two years later, ECF No. 185. As Mr. McReynolds acknowledges, "the one-year limitation period runs from '"the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."' *Id.* at 27 n.2 (quoting 28 U.S.C. § 2255(f)(4)). Mr. McReynolds claims he filed within the one-year period because he only learned of the destruction of the recordings on October 24, 2023, when his counsel asked the Government why recordings of other jailhouse calls were not produced. *Id.* But Mr. McReynolds knew the Government failed to produce recordings of those other calls by the time of sentencing at the latest: defense counsel confirmed at oral argument they knew about the other calls because Mr. McReynolds still remembers them. And the failure to produce the videos is the real basis of Mr. McReynolds's claim. Moreover, had Mr. McReynolds

---

prohibitions on concealed weapons were included in the *Heller* Safe Harbor. The Court rejects this specific argument for two reasons. First, although bans on concealed weapons were discussed in the same paragraph as the *Heller* Safe Harbor, they were not included in the safe harbor itself. *See Heller*, 554 U.S. at 626–27; *Jackson*, 656 F. Supp. 3d 1239, 1243, 1243 n.2 (W.D. Wash. 2023). Second, the regulation at issue in *Bruen* did more than restrict concealed weapons, it restricted people's right to bear arms publicly in any capacity. *See Bruen*, 597 U.S. at 12.

ORDER - 5

exercised due diligence by asking about the calls earlier, instead of waiting two years, he would have also learned the recordings had been destroyed.

Second, Mr. McReynolds has not adequately alleged that the unproduced and unpreserved recordings were material. It was obvious to the Court at the time of sentencing that Mr. McReynolds instructed his wife to conceal a 9mm handgun during the call that had been recorded and produced. Mr. McReynolds does not explain how the other calls would undermine that conclusion. He only asserts they "would have contextualized [his] statements to his wife . . . ." ECF No. 27. Additional context, without more, would not have changed the outcome. Because Mr. McReynolds has not explained how the statements were material, his claim is denied. *See Sanders v. Cullen*, 873 F.3d 778, 811 (9th Cir. 2017) (stating that the failure to preserve evidence only violates due process if the evidence had apparent exculpatory value); *United States v. Olsen*, 704 F.3d 1172, 1181–83 (9th Cir. 2013) (stating that a *Brady* claimant must show a reasonable probability that the unproduced evidence would have altered the outcome); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## CERTIFICATE OF APPEALABILITY

An appeal of this Order may not be taken unless this Court or a circuit justice issues a certificate of appealability finding that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a showing that "reasonable jurists would find the district Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the preceding analysis, the Court concludes that jurists of reason may differ with the Court's conclusion regarding the Second Amendment claim but not the regarding the obstruction of justice claim. Thus, a certificate of appealability should issue regarding the Second Amendment claim only.

This order is entered to memorialize and supplement the oral rulings of the Court. The Court has reviewed the file and Motion and is fully informed. Accordingly,

ORDER - 6

1  **IT IS ORDERED** that Randy Del McReynolds'[s] 28 U.S.C. § 2255 Motion to Vacate Sentence, filed December 20, 2023, **ECF No. 185**, is **DENIED**.

The District Court Executive is directed to:

- File this Order,
- Provide copies to counsel,
- Inform the Ninth Circuit Court of Appeals that if the Movant files a Notice of Appeal that a certificate of appealability is **GRANTED regarding Defendant's Second Amendment claim only**; AND
- **CLOSE** the corresponding civil file, 2:23-cv-00371-WFN.

**DATED** this 29th day of February, 2024.

02-14-24

WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 7